# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SHARI R. TAYLOR, | ) |
|         Plaintiff, | ) |
| vs. | ) 2:07-cr-01602-RCJ-GWF |
| FAIRFIELD RESORTS, INC./WYNDHAM et al., | ) **ORDER** |
|         Defendants. | ) |

This Title VII case arises out of alleged race and gender discrimination and subsequent retaliation. On December 12, 2007, Plaintiffs Shari R. Taylor and Julianne Batiste sued Fairfield Resorts, Inc./Wyndham ("Fairfield"), Scott Dowling, Robert Weaks, Terri Barajas, Steve Thomas, and Diane Howell in this Court on three causes of action under Title VII of the Civil Rights Act of 1964. (#5). Pending before the Court is Defendant's Motion for Reconsideration and Stay (#125, #127). Plaintiff has filed a Response (#128). Defendant has filed a Reply (#129, #130). For the reasons given herein, the Court denies the Motion for Reconsideration (#125) and grants the Motion for Stay (#127) in part.

## I.   FACTS AND PROCEDURAL HISTORY

Fairfield hired Taylor as a timeshare sales representative in August 2005. (#77 ¶ 4). In April 2006, Fairfield transferred her to the Training Department. (*Id.*). It was allegedly company policy to promote telemarketers from the Training Department to the Referral Department upon the

completion of certain performance requirements. (*Id.*). Taylor alleges that although she met these requirements in May 2006, she was not promoted to the Referral Department, while a Caucasian-American male who did not meet the requirements was promoted. (*Id.*). Based on this, Taylor filed a complaint with the Nevada Equal Rights Commission ("NERC") on July 24, 2006. (*Id.*). Taylor claims that she was immediately placed on suspension in retaliation for her complaint to the NERC. (*Id.*). Once her suspension was lifted, Fairfield placed Taylor in the Referral Department, but, according to Taylor, Fairfield further retaliated against her by both failing to provide her the training necessary to her professional success and creating a hostile work environment, causing Taylor to resign. (*Id.* at ¶¶ 5–6). Taylor claims this was a "constructive discharge" in retaliation for her NERC complaint. (*Id.* at ¶ 6). Taylor then received a Dismissal and Notice to Sue from the NERC, dated August 29, 2007. (*Id.* ¶ 8). The AC also lists facts surrounding former Plaintiff Batiste's similar alleged experiences, but because she has been dismissed with prejudice as a plaintiff in this case, the Court need not address this portion of the AC.

On August 26, 2008, the Clerk entered a Notice of Intention to Dismiss Defendant Dowling pursuant to Federal Rule of Civil Procedure 4(m). (#27). The deadline to respond terminated without cure. Dowling has therefore been dismissed as a Defendant. On January 6, 2009, the Court granted the parties' stipulated request to dismiss Defendants Weeks, Barajas, Thomas, and Howell from the action with prejudice. (#50). On June 18, 2009, the Court granted the parties' stipulated request to dismiss Plaintiff Batiste with prejudice. (#101). Only Plaintiff Taylor and Defendant Fairfield remained at that point. Defendant filed a Motion for Summary Judgment (#107), which the Court granted as to all causes of action except the race and gender discrimination claims under Title VII. (*See* #124).

Defendant has filed a Motion to Reconsider (#125), and a Motion to Stay (#127) the due date for the Joint Pretrial Order ("JPTO"). Defendant argues that although the Court stated in the order (#124) (the "Order") that Defendant had not filed a reply, that Defendant in fact filed its Reply

1  (#121) on the last day it was due. The record shows this to be the case. Because the Reply (#125)

2  was in fact timely, Defendant has shown good cause for reconsideration. The Court therefore will

3  now consider the arguments in the Reply (#121) as against the race and gender discrimination

4  claims. Plaintiff objects to reconsideration, but does not argue against extension of time to file the

5  JPTO. (*See* #128).

6  **II.    SUMMARY JUDGMENT STANDARD**

7        The Federal Rules of Civil Procedure provide for summary adjudication when "the

8  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

9  affidavits, if any, show that there is no genuine issue as to any material fact and that the party is

10  entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may

11  affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A

12  dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return

13  a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate

14  and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323–24 (1986).

15        In a summary judgment posture, the Court must consider the parties' respective burdens.

16  "When the party moving for summary judgment would bear the burden of proof at trial, it must

17  come forward with evidence which would entitle it to a directed verdict if the evidence went

18  uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the

19  absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co.,*

20  *Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when

21  the nonmoving party bears the burden of proving the claim or defense, the moving party can meet

22  its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving

23  party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient

24  to establish an element essential to that party's case on which that party will bear the burden of proof

25  at trial. *See Celotex*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden,

1  summary judgment must be denied and the court need not consider the nonmoving party's evidence.
2  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

3  If the moving party meets its initial responsibility, the burden then shifts to the opposing
4  party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita*
5  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a
6  factual dispute, the opposing party need not establish a material issue of fact conclusively in its
7  favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve
8  the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*
9  *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid
10 summary judgment by relying solely on conclusory allegations that are unsupported by factual data.
11 *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the
12 assertions and allegations of the pleadings and set forth specific facts by producing competent
13 evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S.
14 at 324.

15 When considering a summary judgment motion, the Court examines the pleadings,
16 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.
17 Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and
18 determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477
19 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to
20 be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable
21 or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

22 **III.     ANALYSIS**

23 On November 10, 2009, the Court granted summary judgment to Defendant on the retaliation
24 and hostile work environment claims, but denied summary judgment on the race and gender
25 discrimination claims. The Court found that Plaintiff had made out a prima facie case of race and

1  gender discrimination, that Defendant had met its shifted burden to show a legitimate,

2  nondiscriminatory reason for its decision, and that Plaintiff had met her shifted burden to show

3  pretext, establishing a genuine issue of material fact, due mainly to the deposition testimony of

4  Rochel Collins.  The relevant portion of the Order is reproduced here, at length:

> First, the deposition of Rochel Collins includes the following exchange indicating that Collins witnessed race and gender discrimination against Taylor and others:
>
> Q    During your tenure at Fairfield did you observe discrimination based on sex, meaning gender, or Shari Renee Taylor?
>
> A    Yes.
>
> Mr. Rempfer: Objection.  Vague.
>
> . . . .
>
> A    Because I saw that your leads were like way, way older than ours, but you were expected to produce at even a higher level than we were, which I couldn't understand how you could produce an antiquated lead at a greater rate than a more recent client connection. . . .
>
> . . . .
>
> . . . I noticed they did that to a lot of females, black females, in your group of females.  It was such a higher expectation of antiquated leads.
>
> Q    Did you observe discrimination based on race, on Shari R. Taylor in regards to continued telemarketing?
>
> Mr. Rempfer: Objection.  Legal conclusion.
>
> . . . .
>
> A    I would say yes, because there wasn't that many black females.  Even the ones that came in, they were watched with like – real quick, until they had maybe just you and maybe the other ones and that was it.
>
> (Collins Dep. 14:4 –15:13 Aug. 20, 2009).  Collins's bare comparisons of her leads to Taylor's are not relevant to a claim of race discrimination without more, because Collins worked in the Referral Department, while Taylor worked in the Training Department, where everyone's leads were worse.  Also, Collins's race is not clear from her testimony.  The fact she is a female and had much better leads than Taylor does not show there was gender discrimination here.  If she is also

> African-American, this would also tend to negate an inference of race discrimination based on the difference between the quality of Taylor's leads and Collins's. However, in the exchange above, Collins appears to be comparing Taylor's and other black females' leads to other employee's leads within the Training Department. She could also have wrongly inferred discrimination because her friends in the Training Department all happened to have poor leads, but only because they were in the Training Department, not because of their race or gender. The above exchange supports an inference of discrimination, but does not require it. Later in the deposition, Collins testified as follows:
>
>> Q   So you don't know how many people were in the Training Department?
>>
>> A   I know what I told you, and I can't be more specific than that. I never broke it down.
>>
>> Q   Let's make it clear. You are accusing a lot of people.
>>
>> A   I am telling you what I saw. I am telling you I saw a lot of different leads going to different people. I saw the leads that the white ones had and I saw the leads that the black ones had, and they were like this far apart [gesturing]. They had nothing in common.
>
> (Collins Dep. 47:16–48:2). This testimony is better evidence of unlawful discrimination. It is an allegation concerning the quality of sales leads given to black employees versus those given to white employees within the Training Department. Collins also testified to a similar disparity in lead quality with regard to gender:
>
>> Q   Did you see any leads that Fairfield distributed that were given to men that were not given to women?
>>
>> A   Yes. As a matter of fact –
>>
>> Q   Let's keep going.
>
> (Id. 56:9–11). Although Collins was not able to specify which managers gave which better leads to which persons or on which dates, a claim of race or gender discrimination need not be pled with particularity. If a jury credited her testimony, it could reasonably infer race discrimination by Fairfield as a company and render a verdict based on this even in light of her inability to remember particular details. The evidence is weak because of its lack of specificity, but it is sufficient to survive summary judgment.

(#124 at 13:21–15:22).

In the Reply (#121), Defendant argues: (1) the Court should not consider Plaintiff's Response (#118) because it is untimely and the Court specifically denied Plaintiffs motions to

extend time, (*see* #117); (2) even if the Response (#118) were considered, the Court should grant Defendants summary judgment because there is no admissible evidence of discrimination. The Court in its discretion and in the interests of justice chose to consider the late filing of the pro se Plaintiff. The Court will now address the merits argued in Defendant's Reply (#121).

First, Defendant argues that there is no support for a hostile work environment claim. (*See* #121 at 5:16–6:3). The Court granted summary judgment to Defendant on this claim. (*See* #124 at 21). Second, Defendant argues that Plaintiff has not shown that she was entitled to promotion under the objective criteria or that the white male who was promoted was not so entitled. (*See* #121 at 6:4–17). This argument was also addressed in the Order, wherein the Court determined that Plaintiff failed to meet her shifted burden based on the evidence she adduced concerning her sales and other employees' sales. (*See* #124 at 11:15–13:15). Third, Defendant argues that it is entitled to summary judgment on the retaliation claim. (*See* #121 at 6:18–7:15). The Court granted Defendant summary judgment on this claim. (*See* #124 at 17:8–21:6). Fourth, Defendant argues that certain of Plaintiff's exhibits should not be considered because they are not properly authenticated or previously disclosed: (1) the affidavit of Harry Schornberg; and (2) the affidavit of Rochel Collins. (*See* #121 at 7:16–21 (citing #118, Exs. 2–3)). The Court specifically noted in the Order that "the affidavits of Harry Shornberg, III and Rochel Collins . . . are not helpful." (#124 at 16:5–6). The Court did not rely on them in its rulings.

Finally, and most importantly, Defendant argues that Collins's deposition excerpts were not properly authenticated by the court reporter and thus cannot be considered, and in any case they do not establish a genuine issue of material fact.[1] Defendant is correct that the Collins deposition was

---

[1] Defendant also objects to admission of other transcripts of depositions attached to Plaintiff's Response (#118) as Exhibits 5 and 6. (*See* # 121 at 9–17). The Court's reasoning below applies to these depositions, as well, although the Court did not rely on these nearly so much as it relied on Collins's deposition. The Court agrees with Defendant, for example, that the bare fact that a company has been sued for race discrimination, either now or in the past, is no

the only piece of evidence substantially supporting denial of summary judgment on the race and gender discrimination claims, and upon review of the record, it does in fact appear that the excerpts of the deposition transcript were not authenticated by the court reporter. (*See* #118 at 26). Rule 80 states "If stenographically reported testimony at a hearing or trial is admissible in evidence at a later trial, the testimony may be proved by a transcript certified by the person who reported it." Fed. R. Civ. P. 80.

The case law on Rule 80 is almost nonexistent.[2] Rule 80 certification by its own terms makes a certified transcript self-authenticating, but nothing indicates that "may" means "must," as used in the Rule.[3] It simply provides a way for a transcript to be authenticated without a witness present in court (or via pleading affidavit) to authenticate it. But Rule 80 is not the only way to authenticate out-of-court verbal or written statements under the Federal Rules of Evidence, regardless of whether such out-of-court statements were made in the context of a deposition. A person present when such statements are made has personal knowledge of them, and may authenticate them. *See* Fed. R. Evid. 901(b)(1). The treatises indicate that this is the proper construction of Rule 80 with the Federal Rules of Evidence:

> This subdivision [former Rule 80(c)] provides a simple method of proving the testimony of a witness who may have died after having testified at a former trial involving the same subject matter, or whose testimony, for some other reason may be required at a later stage of the same or another trial. It has been held, however, that this rule applies only to an official federal-court stenographer. *Although a private stenographer or an official stenographer not acting within the scope of his or her official duty would be a competent witness as to what was said*, the

---

evidence of culpability.

[2] Westlaw lists one ruling on Rule 80. *See Zenith Radio Corp. v. Matsushita Elec. Induc. Co.*, 505 F. Supp. 1190, 1228 (E.D. Pa. 1980) (holding that the rule does not apply to depositions taken overseas).

[3] Neither Moore nor Wright, Miller & Marcus indicate any case law on inadmissibility due to lack of certification alone. *See* 14 James Wm. Moore, Moore's Federal Practice § 80 (3d ed. 2008); 12 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 3122 (2d ed. 1997).

> certification of the transcript by such a reporter does not make it admissible within the rule.

Wright, Miller & Marcus § 3122 (citations omitted) (emphasis added).

Plaintiff was present at the deposition; therefore, she may authenticate this transcript as her own statement of what she heard said. Of course, the transcript is still inadmissible hearsay unless exempted or excepted from the hearsay rule. Collins's deposition statements are not a party admission under Rule 801(d)(2), because Collins is not an adverse party, and they are not prior testimony under Rule 801(d)(1), both because the present witness (Taylor) is not the declarant (Collins) and because there is no occasion for Plaintiff to rebut a charge of fabrication. Therefore, the deposition testimony is not non-hearsay and must fall under a hearsay exception to be admissible. None of the enumerated hearsay exceptions appear to apply; however, Rule 807 provides a "residual" exception:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed. R. Evid. 807. The Court finds that the residual hearsay exception applies in this situation. The evidence adduced concerns a material fact, is more probative on the relevant point of race and gender discrimination than other evidence Plaintiff has been able to procure, and contains circumstantial guarantees of trustworthiness. Defendant has not claimed that the transcript is false—which it surely would claim if it believed this to be the case—but only that the transcript is not authenticated by the court reporter. Plaintiff was present at the deposition, and she participated

1  in the questioning as a pro se litigant. She has personal knowledge of the statements made. This
2  is not a recollection of offhand comments or a casual conversation, but of a deposition in a federal
3  lawsuit. Furthermore, she did not attempt to recreate the conversation from scratch, but only
4  affirmed what the reporter has reported by attaching the relevant portions of the transcript. Her
5  affirmation of the statements made at the deposition as shown in the transcript is additionally
6  guaranteed to be trustworthy by the fact that the transcript is in the format with which this Court is
7  familiar and does not appear to have been fabricated. The caption of the case and the names of the
8  representatives, deponent, and court reporter are on the cover sheet, as well as the place, time, and
9  date of the deposition. There is no indication at all that this transcript is not authentic. Finally, it
10 would not serve the purposes of the rules or the interests of justice to exclude this extremely reliable
11 hearsay evidence, especially as against a pro se plaintiff. The Court therefore properly considered
12 the transcript excepts and will do so again in addressing the final argument in Defendant's Reply
13 (#121).[4]

14  Defendant argues that Collins's deposition "at most, establishes that a different quality of
15 sales leads were given to the Training Department than to the Referral Department, and otherwise
16 is filled with only conclusory allegations and not firsthand knowledge constituting admissible
17 evidence of discrimination against Taylor." (#121 at 9:1–4). Defendant also argues that it makes
18 sense that Defendant would give the better leads to the senior employees in the Referral Department
19 who had already proven their sales ability. Defendant's argument was addressed by the Court in the
20 Order. As quoted above, the Court noted that "Collins's bare comparisons of her leads to Taylor's
21 are not relevant to a claim of race discrimination without more, because Collins worked in the

---

[4]*Orr v. Bank of Am., NT & SA* is inapposite here. 285 F.3d 764 (9th Cir. 2002). In that case, "[t]he statement in Mirch's affidavit that Exhibit Y is a 'true and correct copy' does not provide authentication because Mirch lacks personal knowledge of Castle's deposition." *Id.* at 774 (citing Fed. R. Evid. 901(b)(1)). Here, Plaintiff does not lack personal knowledge of Collins's deposition, which she not only attended, but conducted.

Referral Department, while Taylor worked in the Training Department, where everyone's leads were worse." (#124 at 14:16–18). The Court continued:

> However, in the exchange above, Collins appears to be comparing Taylor's and other black females' leads to other employee's leads *within* the Training Department. She could also have wrongly inferred discrimination because her friends in the Training Department all happened to have poor leads, but only because they were in the Training Department, not because of their race or gender. The above exchange supports an inference of discrimination, but does not require it.

(*Id.* at 14:22–15:2) (emphasis added). As quoted above, Collins later testified: "I saw the leads that the white ones had and I saw the leads that the black ones had, and they were like this far apart [gesturing]. They had nothing in common." This led the Court to state, "This testimony is better evidence of unlawful discrimination. It is an allegation concerning the quality of sales leads given to black employees versus those given to white employees within the Training Department. Collins also testified to a similar disparity in lead quality with regard to gender . . . ." Nothing in the Reply (#121) convinces the Court to change its conclusion that the evidence adduced by the parties can support inferences leading to a verdict for either Plaintiff or Defendant, and that neither party is entitled to summary judgment on the race and gender discrimination claims.

In summary, Defendant in its Reply (#121) makes no arguments not already considered by the Court in the Order, except: (1) the argument against consideration of certain affidavits, which the Court noted in the Order it did not credit, anyway; and (2) the argument against the admissibility of Collins's deposition, which was in fact admissible under Rule 807.

. . .

. . .

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Reconsider (#125) is DENIED, and the Motion to Stay (#127) is GRANTED in part. The suit itself is not stayed, but the Joint Pretrial Order will not be due until thirty (30) days from the date of this order, as requested.

DATED:     December 23, 2009

_____
Robert C. Jones
United States District Judge